UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA WHITE, ) | |
| ) | |
| Plaintiff, ) | Case: 1:25-cv-09845 |
| ) | |
| v. ) | |
| ) | |
| 16 ON CENTER, LLC, ) | |
| ) | Jury Trial Demanded |
| Defendant. ) | |
| ) | |

# COMPLAINT

Plaintiff, Jessica White ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against 16 on Center, LLC ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") seeking redress for Defendant's sex-based discrimination, sex-based harassment, and retaliation under Title VII.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction have been satisfied.

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8. Plaintiff, Jessica White, is a natural person, over 18-years-of-age, who at all times relevant to the allegations of this Complaint resided in Will County, Illinois.

9. Defendant, 16 on Center, LLC, whose address is 1357 N Elston Avenue, Chicago, Illinois 60642, is a limited liability company that at all times material to the allegations in this Complaint was doing business in and for Cook County, Illinois.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

12. Plaintiff worked for Defendant as a Security Guard from in or around February 2023 until Plaintiff's unlawful constructive discharge on or about January 11, 2025.

13. Plaintiff met or exceeded Defendant's performance expectations throughout the entire duration of her employment, as evidenced by the lack of write ups or negative performance remarks in her employee file.

14. Plaintiff is female and is a member of a protected class because of her sex (female).

15. Since at least October 2024, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within her protected class and has subjected Plaintiff to a hostile work environment on the basis of sex, violating Title VII.

16. On or about October 11, 2024, Plaintiff began experiencing sexual harassment from a co-worker Damian in the security department.

17. For months, Damian had been making inappropriate comments to Plaintiff, thereby subjecting her to pervasive, harassing conduct.

18. In or around October 2024, Defendant held a staff party.

19. During the party, women from concessions and other security guards told Plaintiff to be careful around Damian.

20. At that time, Damian, Plaintiff's harasser, had been passing out a sex tape of him and his girlfriend.

21. Plaintiff told at least 4-5 co-workers about the harassing conduct Damian was subjecting Plaintiff to.

22. Despite this disclosure, no employees elevated the issue to management or HR.

23. In response to Plaintiff's disclosure to her peers, Damian began going up to Plaintiff's friends stating, "sorry we can't hang out anymore. She's kind of crazy. I don't know what's wrong with her."

24. On one particular instance, Damian told Plaintiff "I want to rip you apart."

25. This highly inappropriate comment made Plaintiff uncomfortable and afraid for what Damian may do.

26. On another instance, Plaintiff directly opposed the harassment and attempted to rebuff his advances by telling Damian that she was uncomfortable with the age gap between them to which he responded that he would wait for her.

27. Individuals outside Plaintiff's protected class (non-females) were not subjected to sexual harassment by Damien or other employees of Defendant.

28. In or around the end of October 2024, Plaintiff became too uncomfortable to go to work due to the severe and pervasive conduct Damian was subjecting Plaintiff to.

29. Due to Plaintiff being extremely uncomfortable, on or about December 6, 2024, Plaintiff engaged in protected activity and reported Damian's behavior to a manager Nathan Kaylo ("Mr. Kaylo") via email.

30. At first, Mr. Kaylo seemed nice towards Plaintiff regarding the situation.

31. However, following Plaintiff's report, Mr. Kaylo made no attempt to investigate Plaintiff's report or take any remedial measures.

32. Mr. Kaylo did not have a conversation with Plaintiff regarding the harassment she had been facing until the next time she worked in or around December 2024, allowing the harassment to continue unchecked.

33. When Plaintiff returned to work in or around December 2024, Plaintiff was sat down in a room with both Mr. Kaylo and Damian.

34. During this meeting, Plaintiff was told that if Plaintiff or Damian went to Human Resources ("HR") that they would be terminated.

35. Furthermore, Mr. Kaylo said that he would no longer be able to "protect them" if HR was involved- actively discouraging Plaintiff from engaging in protected activity.

36. After the meeting, another supervisor, Al, told Plaintiff to "let it go" because a male's ego is fragile.

37. By instructing Plaintiff to let the sexual harassment go, Defendant demonstrated a complete lack of disregard for Plaintiff's complaint of sexual harassment and wellbeing.

38. Further, Al's comment about a "male's ego" demonstrated that Defendant prioritizes male employee's emotions over female employee's safety.

39. Additionally, Defendant's managers lack of investigative and remedial measures further contributed to a hostile work environment as no actions were taken following Plaintiff's report of sexual harassment.

40. Unfortunately, the harassment Plaintiff experienced at the hands of Damien was not the first harassment she had been subjected to while working for Defendant.

41. Over the years, Plaintiff had repeatedly reported to Mr. Kaylo conduct that constituted sexual harassment from various men.

42. On one occasion, Plaintiff had reported her co-worker Hal for being inappropriate however no investigation or remedial measures were taken.

43. On another occasion, Plaintiff had reported her supervisor Trey for sexual harassment which resulted in a meeting with her boss, but her report was disregarded, and Plaintiff was instead scolded on a completely unrelated issue.

44. In response to Plaintiff's reports, Mr. Kaylo continuously took no remedial or investigative measures demonstrating a blatant disregard for claims of sexual harassment.

45. However, the harassment Plaintiff was subjected to by Damian was by far the most aggressive.

46. For example, every shift Damian worked with Plaintiff he would make inappropriate and/or sexual comments.

47. Given the nature and persistency of Damian's comments, the harassment created a hostile work environment on the basis of Plaintiff's sex (female).

48. On or about December 21, 2024, Defendant's employee Stephanie Foster emailed Plaintiff explaining that her prior email reporting sexual harassment did not come across as something "more serious" but as two employees who did not like each other.

49. However, Plaintiff's prior email Plaintiff specifically states that Damian had "been uncomfortable and has said inappropriate things towards me."

50. Plaintiff further explained how the situation was causing her "extreme stress" and described in which the ways it was impacting the work environment with her co-workers.

51. Therefore, Defendant had been on notice of the severity of the situation and took no action to remedy the situation, or to launch a prompt, thorough, or objective investigation.

52. In or around January 2025, instead of addressing the sexual harassment in which Plaintiff reported, Plaintiff was instructed to "not spread rumors" further indicating that Defendant would not take Plaintiff's report seriously or take any remedial action following Plaintiff's report.

53. The following day, Plaintiff further engaged in protected activity and responded explaining how disappointed she was in the handling of her sexual harassment complaint.

54. Instead of addressing Plaintiff's complaint of sexual harassment, Defendant victim-blamed and accused Plaintiff of making coworkers uncomfortable by "spreading rumors," which is not what Plaintiff was doing.

55. Because of Defendant's direct disregard and victim blaming, Plaintiff felt like the work environment had become too hostile to bear.

56. No reasonable person could continue working in such an environment under these circumstances.

57. As Defendant had taken no remedial action for the harassment Plaintiff suffered from Damian, as well as their lack of action in the past, Plaintiff felt there was no other option but to face a constructive discharge on or about January 11, 2025.

58. Following Plaintiff's resignation, a HR representative spoke with Plaintiff telling her to "google her options" indicating there was better options surrounding her constructive discharge.

59. This information prompted Plaintiff to go to the EEOC.

60. Ultimately, Plaintiff was unlawfully constructively discharged because of her sex (female) on or about January 11, 2025.

61. Plaintiff was retaliated against, and her employment was ultimately constructively discharged for opposing unlawful discrimination and for exercising her protected rights.

62. Plaintiff reported the sex-based discrimination and harassment to Defendant.

63. Plaintiff suffered multiple adverse employment actions including, but not limited to, being constructively discharged.

64. There is a basis for employer liability for the sex-based discrimination and harassment to which Plaintiff was subjected.

65. Plaintiff can show that she engaged in statutorily protected activity—a necessary component of her retaliation claim—because Plaintiff reported the sexual harassment to her manager.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964
### (Sex-Based Discrimination)

66. Plaintiff repeats and re-alleges paragraphs 1-65 as if fully stated herein.

67. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

68. Plaintiff met or exceeded performance expectations.

69. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

70. Defendant constructively discharged Plaintiff's employment on the basis of Plaintiff's sex.

71. Plaintiff is a member of a protected class under Title VII, due to Plaintiff's sex, female.

72. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

73. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, and loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of The Civil Rights Act of 1964
### (Sexual Harassment)

74. Plaintiff repeats and re-alleges paragraphs 1-65 as if fully stated herein.

75. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

76. Defendant knew or should have known of the sexual harassment.

77. The sexual harassment was severe or pervasive.

78. The sexual harassment was offensive subjectively and objectively.

8

79. The sexual harassment was unwelcomed.

80. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., due to Plaintiff's sex, female.

81. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

82. As a direct and proximate result of the sex-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, and loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
### Violation of Title VII of The Civil Rights Act of 1964
### (Retaliation)

83. Plaintiff repeats and re-alleges paragraphs 1-65 as if fully stated herein.

84. Plaintiff is a member of a protected class under 42 U.S.C. § 2000e, *et seq*.

85. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted sex-based discrimination and harassment.

86. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

87. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of sex-based discrimination and harassment.

88. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

89. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity, specifically, constructive discharge.

90. By virtue of the foregoing, Defendant retaliated against Plaintiff in response to Plaintiff reporting the sex-based discrimination and harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

91. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

92. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

   a. Back pay;

   b. Payment of interest on all back pay and benefits recoverable;

   c. Front pay;

   d. Loss of benefits;

   e. Compensatory and punitive damages;

   f. Reasonable attorneys' fees and costs;

   g. Award pre-judgment interest if applicable; and

   h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury. Dated this 18th day of August 2025.

/s/ *Nathan C. Volheim*

**NATHAN C. VOLHEIM, ESQ.**
IL Bar No.: 6302103
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056
Fax (630) 575 - 8188
nvolheim@sulaimanlaw.com
*Attorney for Plaintiff*

**/s/** ***Sophia Steere***
**SOPHIA STEERE, ESQ.**
KY Bar No.: 100481
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307-7634
Fax (630) 575 - 8188
ssteere@sulaimanlaw.com
*Attorney for Plaintiff*